**Matthew FORGEY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 73A01–0708–CR–390.

Court of Appeals of Indiana.

May 6, 2008.

J.D. Lux, Lux & Lux, P.A., Shelbyville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, for Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Matthew Forgey appeals his convictions, following a jury trial, of Kidnapping as a Class A Felony,[1] Burglary as a Class B Felony,[2] Armed Robbery as a Class B Felony,[3] two counts of Intimidation as a Class C Felony,[4] two counts of Criminal Recklessness as a Class D Felony,[5] two counts of Criminal Confinement as a Class B Felony,[6] Carjacking as a Class B Felony,[7] and two counts of Pointing a Firearm as a Class D Felony.[8] On appeal, Forgey presents numerous issues for review which we restate as follows:

    I.  Whether the trial court abused its discretion by precluding Forgey from wearing his United States Marine Corps uniform at trial;

    II.  Whether the trial court abused its discretion by excluding certain evidence from trial;

    III.  Whether the cumulative effect of the alleged trial court errors denied Forgey a fair trial; and

    IV.  Whether Forgey's sentence is inappropriate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Forgey and Gabriella Wasson dated and were briefly engaged in early 2006.[9] Gabriella ended the relationship by July of 2006. At some point after their breakup, Gabriella obtained a temporary protective order against Forgey in Shelby County Circuit Court, and a hearing was scheduled for a permanent protective order on September 8, 2006. As a condition of the temporary protective order, Forgey was not allowed to possess any firearms. After her relationship with Forgey ended, Gabriella began dating Gus Wasson and ultimately moved into his home in Fairland, Indiana.

On September 5, 2006, Forgey visited his friends Joseph Foster and Gilbert Pankratius. Foster testified that Forgey had shaved off all of his facial hair, except for a thick "Fu Manchu"-style mustache. Tr. pp. 439–440. Forgey asked Foster to drive him to Sgt Smith's Army & Navy store in Shelbyville, where Forgey purchased numerous camouflage items including a shirt, pants, a hat, gloves that were covered with plastic leaves, and face paint. On the way back to Indianapolis, Forgey asked Foster to drive by a house on London Road just outside of Fairland. Forgey claimed the house was a rental property and that he was interested in the property, but later admitted that the house was where Gabriella lived. Foster, being aware of the protective order, refused Forgey's request to take him back to Gabriella's home later that day and suggested that Forgey stay away from her.

Later that day, Forgey visited his roommate Thomas Hodge at work and asked

1.  Ind.Code § 35–42–3–2 (2006).

2.  Ind.Code § 35–43–2–1 (2006).

3.  Ind.Code § 35–42–5–1 (2006).

4.  Ind.Code § 35–45–2–1 (2006).

5.  Ind.Code § 35–42–2–2 (2006).

6.  Ind.Code § 35–42–3–3 (2006).

7.  Ind.Code § 35–42–5–2 (2006).

8.  Ind.Code § 35–47–4–3 (2006).

9.  Gabriella Wasson's maiden name was Johnson. Between the date of the offenses and trial, she and Gus Wasson married. (Tr. 210)

Hodge to take him to Shelbyville. Forgey admitted that he wanted to talk to Gabriella. Hodge, unaware that Gabriella actually lived on London Road, attempted to discourage Forgey from violating the protective order by telling Forgey that he would not drive him all the way to Shelbyville, but would drop him off at London Road and that he could walk the remaining distance to town. Forgey agreed. When Hodge left Forgey at London Road, Forgey was wearing the new camouflage clothing he had bought earlier that day and was carrying a duffle bag. Hodge did not see or speak to Forgey after dropping him off until late the next night, September 6, 2006.

At approximately 8:00 p.m. on September 6, 2006, Gus and Gabriella returned to their home on London Road after visiting friends. Almost immediately thereafter, Forgey burst through the back door. Gus testified that Forgey was dressed in camouflage clothing and had a "Fu Manchu" -style moustache. Tr. p. 123. He was also wearing a ski mask and holding a handgun. Forgey pointed the gun and shifted it back and forth between Gus and Gabriella, while screaming at Gabriella about the protective order. Forgey pointed the gun at Gus's face and pulled the trigger. The gun did not discharge. Puzzled, Forgey examined the gun and then fired a bullet into the kitchen floor. Forgey exclaimed that he was not "f* * *ing around" and that he would kill them. Tr. p. 222.

Forgey stated that Gabriella owed him approximately $4000 and demanded immediate repayment.[10] When Gabriella informed Forgey that she did not have the money, he stated that she could pay off her debt either by sleeping with him and serving as a prostitute for other men, or he could kill Gus or a member of her family. Gabriella refused both "options," and Gus told Forgey that he would find the money if Forgey would leave him and Gabriella alone. Gus gave Forgey approximately $360 in cash and promised to get the rest. Forgey gave Gus one hour to come up with the money.

Forgey then collected Gus's and Gabriella's cell phones, took the keys to Gus's work truck, grabbed his duffle bag from Gus's garage, and forced Gabriella into the truck. Forgey ordered Gus to walk toward a neighbor's barn at gunpoint and told him that he would kill everybody if Gus called the police. Forgey then drove away with Gabriella in Gus's truck.

While driving westbound on I–74, Forgey forced Gabriella to put on ankle shackles and thumb cuffs which he had removed from his duffle bag. Forgey repeatedly asked Gabriella why she had left him, and as he spoke, his mood shifted back and forth between angry and calm. Forgey briefly stopped at his home on Mendenhall Road in Indianapolis before informing Gabriella that he was going to take her to a cabin in Bargersville until Gus gave him the money. Additionally, Forgey told Gabriella that he had decided to kill Gus when he dropped off the money. At some point, Forgey stopped by his home again and instructed Hodge to follow him in Forgey's jeep because he was going to dump Gus's truck in the Target parking lot on State Road 135. Ultimately, Forgey decided to drop Gabriella off at her father's home in Johnson County but renewed his threat to kill Gus if Gabriella ever saw him again.

10. Gabriella admitted that she owed Forgey approximately $1500 for legal fees she had incurred while she and Forgey were dating. However, we note that Forgey apparently included the cost of the engagement ring he had bought for Gabriella as well as additional miscellaneous items in his calculation of how much money Gabriella owed him.

In the meantime, Gus frantically contacted his brother and asked to borrow the $4000. Gus's brother gave him the money and after asking Gus why needed the money, convinced Gus to contact the police. Gus then met with deputies from the Shelby County Sheriff's Department at the Moral Township Fire Department just off of London Road. Eventually, Gus returned home with "[t]wo of Shelby County's finest [deputies] ... just in case Matt had come back." Tr. p. 154. At some point, the deputies waiting with Gus received word that Gabriella was safe and that additional deputies were transporting her back to Shelby County.

On September 7, 2006, the State charged Forgey with Class A felony kidnapping, Class A felony burglary, Class A felony robbery, four counts of Class C felony intimidation, two counts of Class D felony criminal recklessness, two counts of Class B felony criminal confinement, Class B felony carjacking, and two counts of Class D felony pointing a firearm. Two of the Class C felony intimidation counts were dropped prior to trial. Trial was scheduled for May 21, 2007.

On May 15, 2007, the State filed a Motion in Limine seeking in part to preclude Forgey from wearing his Marine Corps uniform at trial,[11] to preclude Forgey from offering evidence relating to Gabriella's former employment,[12] and to preclude Forgey from referring to his lack of a criminal record. The trial court granted the State's motion regarding Forgey's Marine Corps uniform and Gabriella's former employment. The trial court denied the State's motion regarding Forgey's lack of criminal history.

A jury trial commenced on May 21, 2007. At the conclusion of the evidence, the State amended the Class A felony robbery charge to a Class B felony robbery charge. The jury found Forgey guilty as charged. At sentencing, the trial court imposed a fifty-year executed sentence. This appeal follows.

## DISCUSSION AND DECISION

### I. Motion in Limine

Forgey contends that the trial court abused its discretion by granting the State's motion in limine precluding him from wearing his Marine Corps uniform at trial. Forgey additionally contends that the trial court abused its discretion by excluding evidence relating to Gabriella's former employment, Gabriella's alleged former drug use, and Gus's videotaped statement. The granting or denying of a motion in limine is within the sound discretion of the trial court. *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007) The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. *Id.* Therefore, the standard of review applicable to questions concerning the admission of evidence must prevail in the case at bar. *Id.* The standard of review for admissibility of evidence issues is abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

### A. Marine Corps Uniform

■ Forgey argues that he should have been permitted to wear his Marine Corps uniform at trial, or alternatively, that the

---

11. Forgey was honorably discharged from the Marine Corps in July of 1993. Forgey contends that he served a second tour of duty, retired from the Marine Corps, and was awarded a Purple Heart, but has no documentation or medals supporting his claims.

12. Gabriella had formerly worked as a burlesque dancer.

trial should have been continued in order to give him the opportunity to obtain permission from the Marine Corps Commandant to wear his uniform at trial. The State counters by arguing that allowing Forgey to wear his uniform at trial would have violated federal law.

In support, Forgey relies upon *Johnson v. Commonwealth*, 19 Va.App. 163, 449 S.E.2d 819 (1994). In *Johnson*, the Virginia Court of Appeals held that the trial court erred in denying Johnson, who was on active duty in the Navy, the opportunity to wear his uniform at trial. *Id.* at 820. Johnson, however, can be easily distinguished from the instant matter. Here, Forgey was not on active duty when the trial court denied his request to wear his uniform at trial, but rather had been honorably discharged nearly fourteen years prior to trial. Further, had the trial court allowed Forgey to wear his uniform at trial, it would have been a violation of federal law, specifically 10 U.S.C.A. § 771. Under 10 U.S.C.A. § 771, "Except as otherwise provided by law, no person except a member of the ... Marine Corps ... may wear—(1) the uniform, or a distinctive part of the uniform, of the ... Marine Corps; or (2) a uniform any part of which is similar to a distinctive part of the uniform of the ... Marine Corps."[13] We are unwilling to conclude that the trial court abused its discretion by refusing to allow Forgey to violate federal law within its courtroom.

■ Forgey alternatively argues that even if the trial court did not abuse its discretion by denying his request to wear his uniform at trial, it abused its discretion in denying his request for a continuance of

his trial so that he could obtain the necessary approval to wear his uniform at trial. Continuances are not favored and as a general rule should be granted only when the continuance is necessary in furtherance of justice on a showing of good cause. *Welch v. State*, 564 N.E.2d 525, 528 (Ind. Ct.App.1990). The trial court's ruling on a motion for continuance is reviewed only for an abuse of discretion, and to show abuse, the record must reveal prejudice resulting from the trial court's ruling. *Id.*

Here, Forgey failed to show that he was prejudiced by the trial court's denial of his request for a continuance. During trial, Forgey was permitted to testify extensively about his military career, display his "newly-resurrected" uniform to the jury, and explain to the jury that he had wanted to wear it during trial. Because Forgey has failed to show that he suffered any prejudice as a result of either the trial court's denial of his request to wear his uniform at trial or his request for a continuance, we conclude that the trial court did not abuse its discretion in this regard. *See id.*

### B. Admission of Evidence

■ Forgey additionally argues that the trial court abused its discretion by excluding certain evidence from trial. Specifically, Forgey argues that evidence relating to Gabriella's former employment as a burlesque dancer at a nightclub in Indianapolis and evidence relating to her alleged former drug use should have been admitted. He additionally argues that Gus's videotaped statement, recorded shortly after the conclusion of the kidnapping ordeal, should have been admitted. The State counters, arguing that the evi-

---

**13.** The Marine Corps Uniform Regulations set forth very limited situations where a former member of the Marine Corps who was honorably discharged may wear his or her uniform, none of which apply here. The regulations further establish, pursuant to 18 U.S.C.A. § 702, that the penalty for an unauthorized wearing of the Marine Corps uniform includes a fine and/or not more than six months imprisonment.

dence was properly excluded and that prejudicial effect of the evidence would have substantially outweighed any potential probative value.

The decision to admit or exclude evidence is within the trial court's sound discretion, and that decision is afforded a great deal of deference on appeal. *Pritchard v. State,* 810 N.E.2d 758, 760 (Ind.Ct. App.2004). The admission or exclusion of evidence will not generally be reversed absent a manifest abuse of discretion that results in a denial of a fair trial. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Ind. Evidence Rule 401. Forgey argues that the evidence relating to Gabriella's former employment and her alleged former drug use is relevant, but he fails to establish that this evidence would tend to make the existence of any fact of consequence more or less probable. *See* Evid. R. 401. Likewise, Forgey argues that Gus's videotaped statement was relevant to demonstrate his demeanor shortly after the conclusion of the ordeal, but he again fails to establish that the jury's observation of Gus's demeanor shortly after the conclusion of the ordeal would make any fact of consequence more or less probable. *See* Evid. R. 401. Because Forgey has failed to establish that any of the excluded evidence would tend to make any fact of consequence more or less probable, we conclude that the trial court

did not abuse its discretion by excluding this evidence from trial.[14]

Furthermore, Forgey argues that the exclusion of the evidence limited his ability to establish his defense at trial that Gabriella was a willing participant in the kidnapping and that he and Gabriella had planned the kidnapping in order to extort money from Gus. Forgey, however, has failed to demonstrate what portion of the excluded evidence was relevant to his offered defense or how the exclusion of the evidence limited his ability to raise any potential defense. He has also failed to argue that he was prejudiced in any way by either the exclusion of the evidence relating to Gabriella's former employment and alleged former drug use or Gus's videotaped statement. Accordingly, the trial court did not abuse its discretion in this regard.

## II. Cumulative Error

Forgey next contends that even if each of the foregoing alleged errors were harmless, their cumulative effect requires reversal. Under some circumstances, the cumulative effect of trial errors may warrant reversal even if deemed harmless in isolation. *Hubbell v. State,* 754 N.E.2d 884, 895 (Ind.2001). Here, however, because the trial court did not err by denying Forgey's request to wear his Marine Corps uniform at trial or by excluding certain evidence from trial, we find no cumulative error and therefore conclude that Forgey was not denied a fair trial.

## III. Sentence[15]

### A. Sentencing Factors

Finally, Forgey contends that his cumulative fifty-year sentence was inappropri-

---

**14.** We note that it appears that Forgey's ulterior motive for introducing this evidence at trial was simply to attempt to degrade Gabriella's character by placing her, the primary victim, in an unfavorable light before the jury.

In fact, Forgey's trial counsel conceded that any evidence relating to Gabriella's alleged former drug use was irrelevant.

**15.** We note that Forgey's appellate counsel included a copy of the pre-sentence investiga-

ate given the nature of his offense and the mitigating circumstances in his favor. Forgey specifically argues that his lack of criminal history "should [have] been a more heavily weighed mitigating factor at sentencing," that his military history "should also have weighed heavily as a mitigating factor in the sentence he received," and that "the facts of his alleged conduct should have been accounted for by the sentencing court." Appellant's Br. p. 16. The State counters by arguing that Forgey may no longer challenge the weight granted to mitigating factors on appeal and that Forgey has failed to sustain his burden of showing that his military service is of significant mitigating weight.

■■■■■ It is well-established that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* The trial court may increase a sentence or impose consecutive sentences if it finds aggravating factors. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind.2001). A single aggravating factor is sufficient to justify the imposition of consecutive sentences. *McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001).

■ Forgey alleges that the trial court abused its discretion by not affording the mitigating factor of his lack of a criminal history more weight. However, a trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, and therefore cannot be said to have abused its discretion in failing to "properly weigh" such factors. *Anglemyer,* 868 N.E.2d at 491. Therefore, the trial court did not abuse its discretion in this regard.

■ Forgey next alleges that the trial court abused its discretion by failing to consider his military service as a significant mitigating factor. An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *McCann,* 749 N.E.2d at 1121. Here, Forgey argued that the trial court should have found his military service to be a significant mitigating factor but has failed to meet his burden of establishing this on appeal. While we recognize that Forgey was honorably discharged from the Marine Corps in 1993 and commend Forgey for his service to this nation, we cannot conclude that the trial court abused its discretion by failing to consider Forgey's service to be a significant mitigating factor with respect to the instant crimes. Indeed, many of Forgey's actions during the commission of the instant crimes appear to be attributable to his military training. For example, Forgey dressed in military fatigue-style camouflage clothing, duct-taped the ankle shackles and thumb cuffs together to maintain silence, and hid on Gus's property, undetected, for nearly twenty-four hours before committing the offenses. The trial court was within its discretion to

tion report in his appendix on white paper. We remind counsel that Indiana Appellate Rule 9(J) requires that documents and information excluded from public access pursuant to Indiana Administrative Rule 9(G)(1), which includes pre-sentence investigations reports,

must be filed in accordance with Indiana Trial Rule 5(G). That rule provides that such documents must be tendered on light green paper or have a light green coversheet and be marked "Not for Public Access" or "Confidential." Ind. Trial Rule 5(G)(1).

conclude Forgey's military training assisted his commission of the instant offenses and to reject Forgey's military record as a mitigating sentencing factor. *See generally, Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002).

### B. Appropriateness of Sentence

■ Finally, Forgey alleges that his fifty-year sentence was inappropriate in light of the nature of his offense. Upon review, we may revise a sentence authorized by statute "if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). After due consideration, we cannot say that Forgey's sentence is inappropriate. Here, the "nature of the offense" is breaking into an ex-girlfriend's home, kidnapping her at gunpoint, and attempting to extort ransom money from her current boyfriend, all while threatening to kill the victims. Additionally, Forgey planned the attack, watched the parties and their residence for nearly twenty-four hours prior to entering the victims' home, and shot a firearm in the face of one of the victims and in the general vicinity of both victims. In light of the heinous nature of these events, we conclude that the trial court's imposition of a fifty-year executed sentence was not inappropriate. *See* App. R. 7(B).

In sum, the trial court did not abuse its discretion by denying Forgey's request to wear his Marine Corps uniform at trial, excluding statements relating to the primary victim's former employment and alleged former drug use, or excluding the taped statement of the secondary victim recorded shortly after the conclusion of the ordeal. Furthermore, the trial court adequately considered the proposed sentencing factors and Forgey's sentence was appropriate.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.