**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 25 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD L. LANGSTON**
Frankfort, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RYAN KEITH WINCHESTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 12A02-1109-CR-882 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLINTON CIRCUIT COURT
The Honorable Linley E. Pearson, Judge
Cause No. 12C01-1003-FB-83

**June 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Ryan Keith Winchester appeals his conviction of Burglary,[1] a class B felony. He presents the following consolidated and restated issue for review: Did the trial court abuse its discretion when it excluded certain evidence from trial?

We affirm.[2]

On Thursday, March 11, 2010, Michelle Harris was home from college for spring break and living at Jaime Martin and Jackie Howe's residence in Frankfort, Indiana. Howe left for his construction job early that morning, and Martin went to work at a nearby convenience store by 9:00 a.m. Harris stayed in her bedroom and slept all morning.

At some point after noon, Harris awoke to a noise "like rattling of metal" that continued to get louder. *Transcript* at 30. She opened her bedroom door and proceeded to the living room where she observed a man "hunched over" Martin's filing cabinet and prying it open with a screwdriver. *Id.* The man straightened up and indicated that he did not know anyone was home. Harris asked what he was doing, and the man responded that he was getting money that Martin owed him. Harris responded, "I don't know you." *Id.* at 31. The man pulled money from his pocket and after handing it to Harris, asked for a glass of water. He then took the money from Harris's hand said "he was gonna be back in ten to fifteen minutes and that his name was Jay Stevens and that he drove a Black Caddy." *Id.* The man left.

---

[1] Ind. Code Ann. § 35-43-2-1 (West, Westlaw current through legislation effective May 31, 2012).

[2] We remind appellate counsel that Indiana Appellate Rule 46(A)(6) requires the statement of facts section in the appellant's brief to describe in narrative form "the facts relevant to the issues presented for review". Winchester's "facts" simply restate the charges, conviction, and sentence and offer no assistance to us in considering the issues presented on appeal. An appellant's brief must be prepared so that this court, considering the brief alone and independently from the record, can intelligently consider each question presented. *Galvan v. State*, 877 N.E.2d 213 (Ind. Ct. App. 2007).

After unsuccessfully trying to call Martin, Harris went to find her at work. They came home together and eventually called the police, reporting that hundreds of dollars had been stolen from the filing cabinet. Harris provided a general description to the responding officer but could not otherwise identify the intruder. The front door showed evidence of a forced entry, and Martin indicated that she had locked it when she left for work that morning.

The following day, Winchester's best friend, Kevin Ryan Harshbarger, was arrested on an unrelated charge of burglary. In hopes of favorable treatment, Harshbarger offered investigators information regarding the March 11 burglary. He knew specific details of the crime and identified Winchester as the perpetrator. Harshbarger later admitted driving Winchester to the residence and waiting outside while Winchester committed the burglary.

On March 13, police presented two photo arrays to Harris. Harshbarger and Winchester were included among the twelve photographs. Harris immediately identified the photograph of Winchester. Though she had never met him before, Harris unequivocally testified at trial that Winchester, and not Harshbarger,[3] was the intruder.

The State charged Winchester with class B felony burglary, class D felony theft, and class C felony robbery. The jury found Winchester guilty of burglary and not guilty of theft or robbery. Winchester now appeals.

Winchester's appellate argument is difficult to decipher, but boiled down, he complains that he was not allowed to introduce evidence that on the day before the alleged burglary, he went to Martin's residence and purchased marijuana from her (because Howe,

---

[3] With respect to Harshbarger, Harris explained, "I'm definite. He's much taller, much more gangly, he is." *Id*. at 44.

her boyfriend, was not present) and that she fronted him the money. The trial court indicated that it would not allow any references to marijuana but that Winchester could otherwise testify to knowing Martin and being at her residence to purchase something.

Accordingly, Winchester testified[4] that he knew Martin and had been inside her residence on three occasions in the month leading up to the burglary. In particular, he testified that he had been inside the residence on March 10 and had purchased "something" on account for $50 from Martin. *Id.* at 241. He also testified that Harris, whom he did not know, was present and saw him that day.

Jamie Martin testified at trial that she did not know Winchester, though she had been informed that they went to school together in the past. On cross-examination, defense counsel inquired as to whether Winchester had been in her house the day before the burglary or had ever bought anything from her before. Martin indicated negatively with regard to both inquiries. When the defense then made reference to marijuana, the State interrupted and the court ruled that such evidence was inadmissible and not proper impeachment evidence.

> As a general matter, the decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal…. [W]e will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law.

*Carpenter v. State*, 786 N.E.2d 696, 702-03 (Ind. 2003) (citations omitted).
"Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be

without the evidence." *Forgey v. State*, 886 N.E.2d 16, 22 (Ind. Ct. App. 2008) (citing Ind. Evidence Rule 401). Here, Winchester baldly asserts that evidence relating to the sale of marijuana is relevant to his defense, but he wholly fails to establish that this evidence would tend to make the existence of any fact of consequence more or less probable. *See Forgey v. State*, 886 N.E.2d 16. He provides no analysis for his assertion of relevance and essentially argues that a defendant has a constitutional right to "choose the issues he wants to bring to the jury's attention" and that a court's exclusion of evidence that "*the Defendant feels* is relevant" should automatically result in reversal. *Appellant's Brief* at 11 (emphasis supplied). There is no merit to this contention.[5] *See, e.g., Sanchez v. State*, 749 N.E.2d 509 (Ind. 2001) (a defendant's right to present a defense is not without limitation, as the defendant must comply with established rules of procedure and evidence).

Judgment affirmed.

MAY, J., and BARNES, J., concur.

---

[4] On appeal, Winchester inexplicably states that he did not testify at trial. On the contrary, we direct appellate counsel to pages 237 through 266 of the trial transcript.

[5] Winchester's undeveloped assertion that "even if evidence that the Defendant is trying to introduce is not relevant to a material issue in the case, evidence can still be relevant to the jury nullification argument" is baseless and merits no discussion. *Appellant's Brief* at 12.