## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert G. Bottorff II
Bob Bottorff Law PC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald L. Lynch,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 31, 2018

Court of Appeals Case No.
88A01-1707-CR-1583

Appeal from the
Washington Circuit Court

The Honorable
Larry W. Medlock, Judge

Trial Court Cause No.
88C01-1607-F4-299

**Kirsch, Judge.**

[1] Ronald L. Lynch ("Lynch") was convicted after a jury trial of child solicitation[1] as a Level 4 felony and was sentenced to ten years executed. Lynch appeals and raises the following restated and consolidated issues for our review:

> I. Whether the State presented sufficient evidence to support his conviction and to rebut his claimed defense of entrapment; and

> II. Whether the trial court properly sentenced him.

[2] We affirm.

## Facts and Procedural History

[3] On June 26, 2016, John Routson ("Routson"), who, at the time, worked at the Washington County Jail as the assistant jail commander, was at home and off duty, when he received a random text from an individual who was later identified as Lynch. This text was one of hundreds sent by Lynch that day. Routson asked Lynch why Lynch was texting him, and Lynch responded by asking Routson if he was a girl. *Tr. Vol. 2* at 36-37. Lynch told Routson that he was fifty-three years old,[2] and when Lynch asked Routson his age, Routson replied that he (she) was fifteen. *Id.* at 39-40. Routson did so because he suspected that Lynch was a sex offender. *Id.* After Lynch stated that he wished

---

[1] *See* Ind. Code § 35-42-4-6(c).

[2] Although Lynch told Routson that he was fifty-three years old, he was in fact sixty-three years old at the time this crime occurred. *Ex. Vol. 4* at 5; *Tr. Vol. 2* at 201.

Routson was older, Routson replied that age is just a number, and Lynch then began attempting to get Routson to meet him. *Id*. at 40-41. Lynch requested pictures of Routson and repeatedly asked Routson if he could see "her" breasts. *Ex. Vol. 4* at 7-10. When Lynch asked Routson "her" name, Routson replied that it was "Sarah." *Tr. Vol. 2* at 42; *Ex. Vol. 4* at 9. Lynch texted "Sarah" about wanting to have sex with her. *Ex. Vol. 4* at 15-20. When "Sarah" asked Lynch for his name, Lynch replied that it was Ron, and that he would give his last name when they met because he did not want to encounter any trouble because "Sarah" was underage. *Tr. Vol. 2* at 47-49.

[4] Lynch called "Sarah" the same day, and Routson had his wife answer the call. Routson attempted to contact law enforcement concerning the text messages he was receiving from Lynch, but was unsuccessful. After the brief phone call, Lynch continued to text "Sarah" throughout the day, again stating that he wanted to have sex with her. *Ex. Vol. 4* at 12-25. Lynch stopped texting "Sarah" around 6:00 p.m.

[5] Lynch began texting "Sarah" the next morning around 4:00 a.m. Before responding, Routson was able to speak with law enforcement about the text messages. Lynch continued texting "Sarah" and, again, tried to set up a meeting for them to have sex. *Id*. at 30-38. Lynch stopped texting "Sarah" for the day around 6:00 p.m.

[6] The next day, June 28, 2016, Lynch again renewed his texting to "Sarah," beginning at approximately 5:00 a.m., and Routson eventually responded to

these texts a few hours later. Lynch again requested a meeting with "Sarah," and Routson, with the aid of police, set up a meeting with Lynch at the fairgrounds for June 30. *Tr. Vol. 2* at 55; *Ex. Vol. 4* at 43-63. Lynch texted "Sarah" again on June 29, and he asked "Sarah" if she had ever had sex with another girl, and he requested that "Sarah" bring another girl with her to their meeting for sex. *Tr. Vol. 2* at 57; *Ex. Vol. 4* at 69, *Ex. Vol. 5* at 2. "Sarah" told Lynch that, sometime, she would try to get a friend to come with her to have sex with Lynch and that her friend was also fifteen. *Ex. Vol. 5* at 6. Lynch continued the next day to text "Sarah" about having sex with her in various ways. *Ex. Vol. 5* at 8-40.

[7] On the morning of June 30, 2016, Lynch texted "Sarah" that he was on his way to meet her and also called and left a voicemail stating he was on his way. Law enforcement had arranged to have an employee of the Sheriff's Department pose as "Sarah" at the fairgrounds and had undercover surveillance of the area in place. Lynch arrived at the fairgrounds and got out of his car, with his pants unzipped, and approached "Sarah." Police officers then placed Lynch under arrest. The State charged Lynch with one count of Level 4 felony child solicitation. While Lynch was in jail awaiting trial, he made phone calls to his wife and to a twenty-three-year-old woman named Amanda Michael ("Michael"), who was his girlfriend. During these calls, Lynch did not deny that he had been texting and attempting to have sex with a fifteen-year-old girl. *Tr. Vol. 2* at 135-50. A jury trial was held, where Lynch raised as a defense that

he had been entrapped into committing the crime. At the conclusion of the trial, Lynch was found guilty as charged.

[8] During Lynch's sentencing hearing, evidence was presented that Lynch violated the terms of his pre-trial release by using a cell phone to constantly call and text Michael. During these calls and texts, Lynch told Michael that he was on house arrest and was not supposed to have a cell phone. *Tr. Vol. 3* at 20, 38-39, 63. Lynch admitted at the hearing that he contacted his girlfriend by cell phone thousands of times during his pre-trial release. *Id*. at 55-56, 58-60. Also, during sentencing, Lynch testified that he cared for his elderly mother and that he could probably live with his mother if he was given a suspended sentence. Testimony was also given that, prior to the present offense, Lynch had led a law-abiding life except for a prior misdemeanor conviction in 1986. The probation department testified that, although it had initially recommended a six-year sentence in the pre-sentence investigation report, after learning of Lynch's violation of his pre-trial release, its recommendation changed to ten years executed. *Id*. at 45-46, 50.

[9] In sentencing Lynch, the trial court observed that he did not see any remorse from Lynch, but that Lynch had led a mostly law-abiding life and thanked Lynch for his military service. *Id*. at 72. The trial court also took note of Lynch's extensive violation of the pre-trial release order and observed that it demonstrated Lynch's unwillingness to abide by court orders. *Id*. at 72-73. The trial court then sentence Lynch to a ten-year executed sentence. Lynch now appeals his conviction and sentence.

# Discussion and Decision

## I.    Sufficiency of the Evidence

[10]    Our standard of review upon a challenge to the sufficiency of the evidence is well established:  we do not reweigh the evidence or judge the credibility of witnesses.  *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).  We examine only the probative evidence and reasonable inferences therefrom that support the conviction.  *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012).  We consider conflicting evidence most favorably to the trial court's ruling.  *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016).  "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).  A conviction may rest on circumstantial evidence, and it is sufficient if an inference from the circumstantial evidence reasonably tends to support the conviction.  *Perry v. State*, 78 N.E.3d 1, 9 (Ind. Ct. App. 2017).

[11]    Lynch argues that the State failed to present sufficient evidence to support his conviction for Level 4 felony child solicitation.  Specifically, he contends that insufficient evidence was presented to prove that he believed he was speaking to a fifteen-year-old girl when he sent text messages soliciting the person for sex and when he travelled to the fairgrounds to meet the person he had been texting.  Lynch asserts that the evidence showed that he began texting with Routson, who lied to Lynch and stated that he was a fifteen-year-old girl, and that a short time later, Lynch spoke with Routson's wife, an adult woman, on

the phone. Lynch claims that his testimony at trial was that, after this conversation, he knew that he was conversing with an adult woman and that the State failed to present any evidence to rebut this testimony.

[12] In order to convict Lynch of Level 4 felony child solicitation, the State was required to prove beyond a reasonable doubt that Lynch, (1) being at least twenty-one years old, (2) did knowingly or intentionally solicit an individual he believed to be a child at least fourteen years old but less than sixteen years old (3) to engage in sexual intercourse, other sexual conduct, or any fondling or touching intended to arouse or satisfy the sexual desires of either the child or Lynch, and (4) committed the offense by using a computer network and travelled to meet the individual he believed to be a child. Ind. Code § 35-42-4-6(c)(1). Lynch's sole argument as to the sufficiency of the evidence to support his conviction is that the State failed to produce evidence from which the jury could have reasonably inferred that he knowingly intended to solicit sex from a fifteen-year-old child. He does not dispute that sufficient evidence existed for the other elements. At trial, Lynch admitted that he was sixty-three years old,[3] that he sent text messages through the use of a cell phone that was connected to the internet and was essentially a computer network, that his texts clearly requested a meeting to engage in sexual intercourse and other sexual conduct,

_____

[3] We note that, although there was a discrepancy in Lynch's actual age and the age he told "Sarah," it is of no moment here because under the elements of the crime of Level 4 felony child solicitation, the defendant only has to be at least twenty-one years old to satisfy the age element of the crime. *See* Ind. Code § 35-42-4-6(c)(1).

and that he traveled from his home to the Washington County Fairgrounds to meet with the individual with whom he had been texting in order to engage in sexual intercourse and other sexual activity with that person. *Tr. Vol. 2* at 180, 201-07.

[13] Lynch's sole challenge to the sufficiency of the evidence is that he believed the person he was texting and soliciting for sex and travelled to meet for sexual activity was an adult woman. The evidence at trial showed that, in her text messages to Lynch, "Sarah" told him she was fifteen years old and that, later in their message exchange, Lynch, in response to a question as to why he could get in trouble, stated, "Your [sic] under age [sic] babe." *Ex. Vol. 4* at 23. Later, in their conversation, Lynch requested that "Sarah" bring a girlfriend with her for sex, and "Sarah" told him that her girlfriend was also fifteen years old. *Ex. Vol. 5* at 2-7. The jury could reasonably infer from this evidence that Lynch believed "Sarah" to be only fifteen years old. Additionally, in other parts of the text message conversation, "Sarah" told Lynch that, "My mom is home right now," "My mom keeps on asking me who is texting me," "I won't be able to text you when I'm on vacation because I'm going to be with my mom and dad," "Thursday in the morning will be the best time . . . because I'll be at the pool and I can sneak away," "I'm sorry I haven't texted you back but I only have enough min[utes] for 2 text message[s,] my mom promised to get me more min[utes] tom[orrow]," "I'm with my mom shoping [sic] . . . and I [sic] waiting on her to get me more min[utes] for my phone," and "I can't talk on the phone[,] I'm with my mom." *Ex. Vol. 4* at 8, 10, 52, 55, 63, 65; *Ex. Vol. 5* at 15.

Based on this evidence, the State presented sufficient evidence from which the jury could have reasonably inferred that Lynch believed "Sarah" was fifteen years old and could have found Lynch guilty of child solicitation.

[14]     Although Lynch argues that he testified that he believed the person with whom he was texting about meeting for sex was an adult woman because after he spoke with the person, who was actually Routson's wife, on the phone on June 26, he believed from her voice that she was an adult woman in her twenties or thirties, the jury was not required to believe his testimony. Lynch's argument is merely a request for this court to reweigh the evidence, which we cannot do. *McHenry*, 820 N.E.2d at 126. Sufficient evidence was presented to support the elements of Level 4 felony child solicitation.

[15]     Lynch also argues that the evidence presented at trial was insufficient for the State to overcome his defense of entrapment. He contends that the evidence showed that, when he found out that the person he was texting was only fifteen, Lynch attempted to extricate himself from the conversation, but that Routson's comment that, "Age is just a [number]," *Ex. Vol. 4* at 6, induced his illegal conduct. Lynch further claims that the State failed to elicit any evidence that he was predisposed to commit the crime of child solicitation.

[16]     We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence. *Griesemer v. State*, 26 N.E.3d 606, 608 (Ind. 2015). We neither reweigh the evidence nor reassess the credibility of witnesses. *Id.* We instead look to the probative evidence supporting the verdict

and the reasonable inferences drawn from that evidence. *Id*. If we find a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction. The defense of entrapment is available to a defendant where the defendant's illegal conduct was the product of a law enforcement officer, the officer used persuasion or other means likely to cause the defendant to engage in the conduct, and the defendant was not predisposed to commit the offense. *See* Ind. Code § 35-41-3-9(a). Entrapment is not available as a valid defense where law enforcement merely affords the defendant an opportunity to commit the offense. *See* I.C. § 35-41-3-9(b).

[17] A defendant does not need to formally plead the entrapment defense, and it can be raised, often on cross-examination of the State's witnesses, by affirmatively showing the police were involved in the criminal activity and expressing an intent to rely on the defense. *Griesemer*, 26 N.E.3d at 609 (citing *Wallace v. State*, 498 N.E.2d 961, 964 (Ind. 1986); *Fearrin v. State*, 551 N.E.2d 472, 473 (Ind. Ct. App. 1990)). The State then has the opportunity for rebuttal and must disprove one of the statutory elements beyond a reasonable doubt. *Id*. No entrapment exists if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime. *Id*. "To rebut the inducement element, the State must prove police efforts did not produce the defendant's prohibited conduct because those efforts lacked 'a persuasive or other force.'" *Id*. (citations omitted).

[18] Here, the evidence showed that Lynch initiated contact by sending out hundreds of random text messages, and when Routson responded, Lynch

persistently asked if he was a girl. Even after Routson told Lynch that he was texting with a fifteen-year-old girl, Lynch continued to send text messages and Lynch was the one who, first asked if "Sarah" wanted to meet sometime, and then began talking about having sex. Based on the evidence presented at trial, the jury could have reasonably inferred that the criminal conduct originated with Lynch, that the police did not engage in any persuasive or other force with Lynch, and that the police did not induce Lynch to commit the offense but merely afforded him the opportunity to engage in his own criminal conduct. Because the evidence at trial showed that the police did not induce Lynch into committing child solicitation and merely afforded him the opportunity to commit the offense, we conclude that sufficient evidence was presented to rebut Lynch's entrapment defense.

## II. Sentencing

Lynch next argues that the trial court did not properly sentence him. Lynch initially contends that the trial court abused its discretion in sentencing him. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). As long as a sentence is within the statutory range, we review only for an abuse of discretion. *Id.* "An abuse of discretion occurs if the sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court may be found to have abused its discretion by failing to enter a sentencing statement at all; entering a

sentencing statement that explains its reasons for imposing a sentence where such reasons are not supported by the record or are improper as a matter of law; or entering a sentencing statement that omits reasons which are clearly supported by the record and advanced for consideration. *Id*. at 490-91. "[R]egardless of the presence or absence of aggravating or mitigating circumstances, a trial court may impose any sentence authorized by statute and permissible under the Indiana Constitution." *Kubina v. State*, 997 N.E.2d 1134, 1137 (Ind. Ct. App. 2013) (citing Indiana Code section 35-38-1-7.1, providing non-exhaustive list of aggravating and mitigating circumstances court may consider). A trial court is not required to accept a defendant's argument as to what is a mitigating factor or to give mitigating factors the same weight as does a defendant. *Conley v. State*, 972 N.E.2d 864, 873 (Ind. 2012). "If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Anglemyer,* 868 N.E.2d at 493. However, a court abuses its discretion if it does not consider significant mitigators advanced by the defendant and clearly supported by the record. *Id.* at 490.

[20] Lynch contends that the trial court's sentencing order amounted to an abuse of discretion. He asserts that the trial court abused its discretion in analyzing the aggravating and mitigating factors and that it failed to clearly indicate its reasons for sentencing him to ten years executed. Lynch specifically takes issue with the trial court's finding as an aggravator his violation of the court's pre-trial release order and the fact that the trial court "inexplicably" cancelled out

that he had essentially led a law-abiding life with the fact that he had been convicted of a misdemeanor over thirty years ago. Lynch also maintains that the trial court abused its discretion because it disregarded his military service as a mitigating factor.

[21]  Although Lynch alleges that the trial court did not clearly show its reasons for sentencing him, in its written sentencing statement, the trial court stated its reasons as follows:

> The aggravating factors considered by the Court are:
>
> A. The Defendant violated the Court's pretrial release order.
>
> B. That the Defendant failed to show remorse for the offense.
>
> Factors that balanced each other:
>
> A. The Defendant has little criminal history and has le[d] a law-abiding life for a substantial period before commission of the crime.
>
> B. The Defendant has a criminal history.
>
> That the Court finds the Aggravating Factors outweighed the Mitigating Factors.

*Appellant's App. Vol. II* at 221. Additionally, at the sentencing hearing, the trial court made an oral sentencing statement, in which it stated these reasons on which it based Lynch's sentence. *Tr. Vol. 3* at 72-73. We, therefore, conclude

that the trial court did in fact make an adequate sentencing statement and listed the factors it relied on in making its sentencing determination.

[22] As to Lynch's assertion that the trial court wholly disregarded his military service as a mitigating circumstance, we find no abuse of discretion. The trial court actually did comment on Lynch's military service in its oral sentencing statement by thanking Lynch for his service, but finding that such service was not a factor in sentencing. *Id*. at 72. Although a defendant's military service is commendable, it is not necessarily a significant mitigating circumstance and a trial court may reject it as a significant mitigating factor for sentencing. *Harman v. State*, 4 N.E.3d 209, 218 (Ind. Ct. App. 2014) (citing *Forgey v. State*, 886 N.E.2d 16, 23-24 (Ind. Ct. App. 2008)), *trans. denied*. That is particularly true where, as here, the defendant fails to explain why his military service should be considered as a mitigating circumstance. *See id.* The trial court did not abuse its discretion in not finding Lynch's military service to be a significant mitigating factor.

[23] As to Lynch's contention that it was an abuse of discretion for the trial court to cancel out his law-abiding life because of a minor criminal conviction many years ago, we do not find error. In making its determination, the trial court carefully weighed the fact that Lynch had led a law-abiding life for a substantial period of time before committing the present offense with the fact that he did, in fact, have some criminal history, albeit many years prior to the current offense. *Appellant's App. Vol. II* at 221; *Tr. Vol. 3* at 72. We do not find any abuse of discretion for the trial court to make such a determination. *See Harman*, 4

N.E.3d at 219 (finding no abuse of discretion when trial court found that defendant's limited criminal history did not constitute a significant mitigating circumstance); *Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003) (finding that trial court did not abuse its discretion when it did not find defendant's limited criminal history to be a mitigating circumstance, nor when it found the limited criminal history to be an aggravating circumstance), *trans. denied*.

[24]  Further, as to Lynch's argument that it was an abuse of discretion to find his violation of the pre-trial release order to be a significant aggravating factor, we find no error.  Lynch was prohibited by his pre-trial release conditions from using any smart phones, computers, or other electronic devices both to keep him from contacting children and in order to gauge whether he would abide by court orders.  *Tr. Vol. 3* at 72.  Lynch, however, blatantly violated this condition of his pre-trial release.  We, therefore, conclude that the trial court did not abuse its discretion in finding this violation to be a significant aggravating factor because it demonstrated that Lynch was not a good candidate for probation because he had shown that he was unwilling to abide by the trial court's orders.  For all of the above reasons, the trial court did not abuse its discretion in sentencing Lynch.

[25]  Lynch also argues that his ten-year sentence is inappropriate.  Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the

character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, not to achieve a perceived correct result in each case. *Brown v. State*, 52 N.E.3d 945, 954 (Ind. Ct. App. 2016) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied*. We independently examine the nature of a defendant's offenses and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. The defendant bears the burden of persuading us that his sentence is inappropriate. *Brown*, 52 N.E.3d at 954.

[26] Lynch argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Specifically, Lynch contends that, as to the nature of the offense, it was no more egregious than what the State was required to prove at trial and therefore not worthy of an aggravated sentence. Based on his character, Lynch asserts that his sentence is inappropriate because with the exception of the present offense and a single misdemeanor conviction thirty years ago, "his character is nearly completely unblemished." *Appellant's Br.* at 22. He also maintains that his character causes his sentence to be inappropriate because he served in the military for seventeen years and had a steady employment history.

[27] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). In the present case, Lynch was convicted of Level 4 felony child solicitation. The advisory sentence for a Level 4 felony is six years, with a range of between two and twelve years. Ind. Code § 35-50-2-5.5. The trial court sentenced Lynch to a fully executed sentence of ten years.

[28] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). In the present case, Lynch explicitly communicated various sexual acts and desires that he wished to perform with "Sarah," who he believed to be a fifteen-year-old girl. This communication occurred over a four-day period with hundreds of text messages exchanged. Lynch further arranged to meet with "Sarah" in order to engage in these acts. There was also evidence that Lynch had initially sent out hundreds of random text messages from which can be inferred that he was attempting to make contact with multiple young girls for the same solicitation. We conclude that Lynch's sentence is not inappropriate in light of the nature of the offense.

[29] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. As to Lynch's character, the evidence showed that he led a law-abiding life for the most part prior to this instant offense; however, he did have a public intoxication conviction from 1986. Although he did not have an extensive criminal history, the evidence showed

that Lynch blatantly violated his pretrial release order by utilizing a cell phone to send thousands of text messages to his girlfriend. This violation demonstrated that Lynch was not able to abide by orders of the trial court and that he would not be a good candidate for probation. We conclude that Lynch's sentence is not inappropriate in light of his character. For all of the above reason, we find that Lynch's sentence is not inappropriate under Appellate Rule 7(B).

[30] Affirmed.

[31] Bailey, J., and Pyle, J., concur.