**FOR PUBLICATION**



FILED
Nov 06 2013, 5:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | |
|---|---|
| KIMBERLY KUBINA, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 45A03-1303-CR-100 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

---

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diana Ross Boswell, Judge
Cause No. 45G03-1105-MR-5

---

**November 6, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Kimberly Kubina ("Kubina") pled guilty to a single count of Neglect of a Dependent, as a Class A felony,[1] and was sentenced to thirty-five years imprisonment. She now appeals, raising for our review only whether the trial court abused its discretion when it found aggravating and mitigating circumstances during sentencing.[2]

We affirm.

**Facts and Procedural History**

We take our statement of facts from the stipulated facts entered along with Kubina's plea agreement.

During 2007 and part of 2008, Kubina lived in Merrillville with her husband Riley Choate ("Choate"); her minor stepchildren, Christian Choate ("Christian") and C.C.; her child with Choate, E.C.; her daughter from a prior relationship, R.K.; and several of her nieces and nephews. In March 2007, Kubina and Choate notified Christian's elementary school that he would be homeschooled from that date forward. Kubina and Choate took this action because Choate had begun to beat Christian regularly. Kubina was afraid the school would notice bruises on Christian, that this would lead to inquiries from the Department of Child Services, and that all the children would be removed from the Kubina/Choate residence.

Over time, Choate's beatings of Christian became increasingly violent. Kubina would

---

[1] Ind. Code § 35-46-1-4.

[2] Kubina also claims her sentence was inappropriate. However, she fails to make any cogent argument in this regard, and thus that issue is waived. See Perry v. State, 921 N.E.2d 525, 528 (Ind. Ct. App. 2010).

step in to stop the beatings, but never notified law enforcement or sought medical treatment for Christian.

Also beginning in 2007, Christian was confined to a basement room. While initially allowed to leave the room more often, eventually Christian was permitted to leave the room only to eat and use the bathroom. Christian's confinement continued even after Kubina and Choate learned that Christian had begun to relieve himself in his basement room.

In April 2008, the family moved to a home in Gary. Christian continued to be confined to one room in the home—first a bathroom, then later a bedroom he shared with Choate. In late 2008, Christian escaped the home in Gary until Kubina and one of her nieces, T.H., discovered Christian at a nearby Walgreens store.

After this, Choate beat Christian and, with Kubina's help, confined Christian to a dog cage for the ensuing six to eight months. Christian was permitted to leave the cage only to eat, use the bathroom, and perform exercises at Choate's instruction; Christian was only permitted to do exercises because Kubina observed that Christian's feet were turning purple, which indicated likely circulatory problems. Eventually, Christian began to soil himself while in the cage; Kubina forced him to wear diapers.

Also during this period, Kubina directed her stepdaughter, C.C., to feed Christian one packet of Ramen noodles for breakfast and another packet for lunch, as well as a serving of the family's dinner. Kubina eventually observed that, though Christian was thirteen years old, he wore clothing at a size appropriate for a significantly younger child. Kubina then told C.C. to prepare two packets of Ramen noodles for each meal, and began to prepare protein

shakes for Christian. However, Kubina ceased to oversee Christian's feeding after she taught C.C. to prepare Christian's food.

Throughout this period, Kubina continued to observe Choate's beatings of Christian, but did not inform law enforcement or attempt to obtain medical attention for the child. Kubina also ordered C.C. to give Christian weekly cold-water baths to reduce swelling and bruising on Christian's body.

On or around April 1, 2009, Kubina had been out of the home running errands. She returned to find everyone in the home "walking on egg-shells" around Choate because Christian had gotten into trouble. (App'x at 171.) Kubina let Christian out of his cage to lay on a baby mattress, and noticed that he was "pale, lethargic, and glassy-eyed." (App'x at 172.)

On April 2, 2009, Kubina left the home again to attend a conference at T.H.'s school. During the conference, Kubina received notice by cell phone that "something was wrong at home with 'grandma.'" (App'x at 172.) Upon her return, Kubina found Christian had died. She notified Choate, who told her "to 'take care of it' until he got home." (App'x at 172.)

Kubina consequently ordered C.C. to wrap Christian's body in a blanket, place the body in two garbage bags, and put the entire bundle into a plastic tote. Kubina then ordered C.C. to help her carry Christian's body across the street to a trailer belonging to someone called "Grandma." (App'x at 172.)

After this, Kubina enlisted her sister's help in driving to a hardware store to purchase two bags of concrete and two bags of lime. Upon Choate's return from work that evening

4

and at his insistence, Kubina assisted Choate in burying Christian's body underneath a shed on "Grandma's" property. Choate tore up the floor of the shed and dug a two- or three-foot-deep hole; Christian's body was placed in the hole. Kubina gave Choate lime and concrete to cover Christian's body, placed a cross and a Bible on the body, and watched as Choate covered Christian's body with dirt.

Sometime in 2011, C.C. informed her and Christian's mother about the circumstances of Christian's death and burial. C.C.'s mother contacted police, and an investigation ensued that led to the arrests of Kubina and Choate.

On May 10, 2011, Kubina was charged with Murder, a Felony;[3] Battery, as a Class A felony;[4] two counts of Neglect of a Dependent, each as Class A felonies;[5] and Criminal Confinement, as a Class B felony.[6] On May 16, 2011, the charging information was amended, and the following charges against Kubina were added: three counts of Obstruction of Justice, as Class D felonies;[7] two counts of Neglect of a Dependent, as Class D felonies; Removal of a Body from Death Scene, as a Class D felony;[8] Failure to Notify Authorities of the Discovery of a Dead Body, as a Class A misdemeanor;[9] and Failure to Report a Dead

---

[3] I.C. § 35-42-1-1.

[4] I.C. § 35-42-2-1.

[5] I.C. § 35-46-1-4.

[6] I.C. § 35-42-3-3.

[7] I.C. § 35-44-3-4.

[8] I.C. § 36-2-14-17.

[9] I.C. § 36-2-14-17.

5

Body, as a Class A misdemeanor.[10]

On May 2, 2012, Kubina and the State entered into a plea agreement whereby Kubina agreed to plead guilty to a single count of Neglect of a Dependent, as a Class A felony, with all other charges against her dismissed. In exchange, Kubina was obligated to provide testimony against Choate. The parties agreed to a sentencing range of twenty-five to thirty-five years imprisonment, with the length of the sentence to be determined by the trial court.

The trial court accepted the plea agreement, and subsequently conducted a sentencing hearing on February 19, 2013. During the hearing, both parties introduced testimony in support of their respective positions. At the conclusion of the hearing, the trial court sentenced Kubina to thirty-five years imprisonment, the maximum term permitted by the plea agreement.

This appeal ensued.

### Discussion and Decision

Kubina raises a single issue for our review, whether during sentencing the trial court abused its discretion in finding aggravating and mitigating circumstances.

Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). Subject to review under the abuse of discretion standard are "[t]he reasons given" for entry of a sentence, as well as "the omission of reasons arguably supported by the record"—that is, the trial court's finding of aggravating and mitigating circumstances in

---

[10] I.C. § 35-45-19-3.

6

reaching a sentencing decision. Id. at 491.

Here, Kubina contends that the trial court improperly took into account her position of trust vis-à-vis Christian when determining aggravating circumstances. She also argues that the court ignored uncontroverted evidence that she had, prior to her arrest, been suffering with undiagnosed and untreated mental illness; that Choate had abused her throughout the marriage, often in front of the children in the home; that she feared losing her children if she reported Christian's abuse to police or healthcare providers; and that she was sincerely remorseful.

Among the aggravating circumstances the trial court may take into account in reaching a sentence is that the defendant "was in a position having care, custody, or control of the victim of the offense." I.C. § 35-38-1-7.1(a)(8). Though our statutes provide for a number of mitigating circumstances, none of which are exclusive, none of those listed by the statute were ignored by the trial court. See I.C. §§ 35-38-1-7.1(b) & (c). However, regardless of the presence or absence of aggravating or mitigating circumstances, a trial court may impose any sentence authorized by statute and permissible under the Indiana Constitution. I.C. § 35-38-1-7.1(d).

As to the question of Kubina's position of trust, Kubina contends that taking an element of an offense as an aggravating circumstance is an abuse of discretion. Yet trial courts are not prohibited from considering material elements of an underlying offense in considering aggravating circumstances at sentencing. Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008). And Indiana courts have long held that "so long as the trial court takes into

7

consideration facts not needed to prove the elements of the offense, the nature and circumstances of the crime can appropriately be considered as aggravating circumstances." Hall v. State, 870 N.E.2d 449, 464 (Ind. Ct. App. 2007) (citing McCann v. State, 749 N.E.2d 1116, 1120 (Ind. 2001)), trans. denied.

The statute under which Kubina was convicted requires that the defendant have had "care of a dependent." I.C. § 35-46-1-4(a). Kubina had more than mere care of Christian; she was a stepparent involved in Christian's upbringing and living in the same home with him, and directly assisted Choate in Christian's abuse on numerous occasions. The trial court noted several of these facts, as well as the nature of Christian's "long, lingering, torturous death." (Sentencing Tr. at 115.) We thus find no abuse of discretion in the trial court's finding that Kubina was in a position of trust with Christian.

As to mitigating circumstances, the trial court took into account only one such factor: that Kubina lacked any criminal history. (Sentencing Tr. at 115.) As to the question of remorse, while the trial court found that Kubina was remorseful, it afforded that determination no weight because of the nature and circumstances of the offense. (Sentencing Tr. at 113.) As to the rest of Kubina's proposed mitigating circumstances, the statute does not by its terms require that the trial court have taken them into account. Nevertheless, we note that the trial court noted these facts, but apparently afforded them no weight in reaching a sentencing decision, observing "I've seen some pretty bad foster homes before but nothing, nothing that rises to the level of this." (Sentencing Tr. at 114.)

We decline Kubina's invitation to second-guess the court's finding and weighing of

8

aggravating and mitigating circumstances. We therefore find no abuse of discretion in the trial court's sentencing.

## Conclusion

Having found no abuse of discretion in the trial court's determination of aggravating and mitigating circumstances, we affirm the trial court's sentencing order.

Affirmed.

MAY, J., and BRADFORD, J., concur.