## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 09 2020, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James L. Dodson, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

October 9, 2020

Court of Appeals Case No.
20A-CR-89

Appeal from the Allen Superior Court

The Honorable David M. Zent, Judge

Trial Court Cause No.
02D06-1904-MR-4

**Crone, Judge.**

# Case Summary

James L. Dodson, Jr., and another man gunned down Michael Lovett in broad daylight in front of Lovett's barber shop. The State charged Dodson with murder and level 6 felony criminal recklessness. After a trial, the jury found him guilty as charged. The trial court sentenced him to sixty-five years for murder and an additional two years and 183 days for criminal recklessness. The court enhanced Dodson's murder sentence by twenty years based on the jury's finding that he committed the murder with a firearm, resulting in an aggregate sentence of over eighty-seven years. On appeal, Dodson contends that the evidence is insufficient to support his murder conviction, that the trial court improperly excluded certain evidence, and that his sentence is inappropriate. We affirm.

# Facts and Procedural History[1]

Lovett owned a barber shop in Fort Wayne. He was the father of six children; his girlfriend, Keioda Johnson, was the mother of the two youngest children. On April 9, 2019, Johnson picked up Lovett from the shop and drove him to lunch. On their way back to the shop, Lovett received a call from Dodson, which Johnson could hear through the Bluetooth speaker connection. Lovett

---

[1] Dodson's brief and appendix violate the Indiana Rules of Appellate Procedure in several respects. As we have reminded Dodson's counsel on prior occasions, standards of review belong in the argument section of a brief pursuant to Appellate Rule 46(A)(8)(b). Also, counsel failed to include in the appendix a copy of the chronological case summary as required by Appellate Rule 50(B)(1)(a), and the table of contents does not include the date for each item contained in the appendix as required by Appellate Rule 50(C).

and Johnson were close enough to the shop that Johnson could see Dodson peering through the shop window. Dodson was wearing yellow pants and a multicolored jacket. Dodson asked Lovett if he was working today, and Lovett said that he was. Lovett, Johnson, and Dodson went into the shop. Lovett began to cut Dodson's hair and played music from a rapper who had recently been murdered. The trio talked about the rapper and then began to discuss religion. Johnson received a call from her mother, and she went outside to talk. When she came back inside, Lovett and Dodson were arguing loudly. Lovett removed a handgun from his waistband and placed it on a bench; Johnson put the handgun in her laptop bag. Johnson was "scared" and asked Dodson to leave. Tr. Vol. 2 at 206. Dodson asked Lovett "if he was gonna finish cutting his hair" but ultimately left the shop. *Id.* at 216. Johnson picked up her children from daycare and called Lovett sometime after 5:30 p.m. She had planned to return to the shop, but Lovett told her that his friend Haroun Bangura had stopped by to talk, and he would call her when he was done. Johnson went home.

[3] Shortly after 6:00 p.m., Bangura and a friend were in the barber shop sitting and talking with Lovett when Lovett got up, went outside, and closed the door. Bangura heard Lovett say, "[Y]ou can't bring it here." Tr. Vol. 3 at 8. Then Bangura heard multiple gunshots, and he and his friend ran to the back of the store. Eventually, they went outside and saw Lovett lying dead on the sidewalk in front of the shop. He had been struck in the head, torso, and thigh by a total of seven bullets; a gunshot wound to his right temple alone would have been

fatal, as would a second gunshot wound to his lower right flank that severed his abdominal aorta. Two bullets struck the shop's façade, and a third smashed through a window and landed in a sink at the back of the shop. At the scene, police collected eleven shell casings from a 10-millimeter firearm and six shell casings from a .40-caliber firearm. A .40-caliber handgun was found next to Lovett's body, but none of the shell casings were from that firearm.

[4]     The shooting was captured on a surveillance video from a gas station across the street. The video shows Dodson in his distinctive clothing and two other men confronting Lovett outside the barber shop, Dodson and one of the men shooting Lovett, and then the three men fleeing the scene. Dodson got into his SUV, which was parked in the gas station lot, and drove away. A passing motorist who witnessed the shooting identified Dodson as one of the gunmen from two six-person photo arrays. Dodson's SUV was found in his uncle's garage in Kentucky, and in May 2019 he was arrested in Mississippi.

[5]     The State charged Dodson with murder for knowingly or intentionally killing Lovett while acting in concert with an unknown subject, and with level 6 felony criminal recklessness for recklessly, knowingly, or intentionally discharging a firearm, which created a substantial risk of bodily injury to people in the area. The State also sought a sentence enhancement for the use of a firearm in the commission of the murder. After a trial, the jury found Dodson guilty as charged and that he had used a firearm in the commission of the murder. As Dodson was escorted from the courtroom, he remarked, "At least I'm still alive." Tr. Vol. 5 at 21. Dodson refused to participate in the interview for his

presentence investigation report, telling the probation officer, "I don't give a f**k." Appellant's App. Vol. 2 at 136. At the sentencing hearing, as the trial court was explaining its finding of aggravating and mitigating circumstances, Dodson snapped, "Whatever, man, give me my mother f**king time." Tr. Vol. 5 at 26. The court found Dodson to be "the worst of the worst" and sentenced him to sixty-five years for murder, enhanced by twenty years for the use of a firearm, and to a consecutive term of two years and 183 days for criminal recklessness, for an aggregate sentence of eighty-seven years and 183 days. *Id.* Dodson now appeals his convictions and sentence.

## Discussion and Decision

## Section 1 – The evidence is sufficient to support Dodson's murder conviction.

[6] Dodson first contends that the evidence is insufficient to support his murder conviction. "Sufficiency of the evidence claims 'face a steep standard of review.'" *New v. State*, 135 N.E.3d 619, 624 (Ind. Ct. App. 2019) (quoting *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016)). "When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility." *Id*. at 624-25. "Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt." *Id*. at 625. "Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense." *Id*.

[7]     Dodson does not dispute that he killed Lovett. Instead, he claims that the events depicted on the surveillance video

> at their worst demonstrates [sic] a 'heat of passion' event that would make the crime voluntary manslaughter rather than murder. [They] also strongly indicate a possible aggravated battery or reckless homicide. The one thing that the video does not support beyond a reasonable doubt is an intent on the part of [Dodson] to kill the victim in this case.

Appellant's Br. at 21.

[8]     We are unpersuaded, for several reasons. First, voluntary manslaughter, like murder, requires a knowing or intentional killing. Ind. Code § 35-42-1-3. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). The only difference between voluntary manslaughter and murder is the existence of sudden heat, and Dodson did not ask the trial court to instruct the jury on either voluntary manslaughter or sudden heat. Nor did he ask the trial court to instruct the jury on aggravated battery or reckless homicide. Nor did he raise a claim that he acted in defense of himself or his companions, which he insinuates might have been appropriate under the circumstances.

[9]     "Intent is a mental function and, absent admission, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences of such conduct." *Wilson v. State*, 611 N.E.2d 160, 165 (Ind. Ct.

App. 1993), *trans. denied*. "The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm." *Id*. Here, Dodson and one of his companions fired seventeen shots at Lovett at close range, and Lovett was hit with seven bullets. The jury watched the surveillance video, considered the other evidence, and found Dodson guilty of murder. We must decline Dodson's invitation to reweigh the evidence, which is more than sufficient to support his conviction, and therefore we affirm it.

## Section 2 – Dodson failed to preserve his evidentiary claim regarding whether Lovett could legally possess a firearm.

[10] Next, Dodson claims that the trial court erroneously prevented him from presenting evidence that Lovett was legally prohibited from possessing a firearm due to a felony conviction. During his cross examination of Johnson, Dodson's counsel approached the bench and stated,

> I want to ask a question but I want to make sure because I'm anticipating push back, but I would like to ask her if she knows whether or not [Lovett] was legally allowed to own or possess a firearm. That's all the farther I want to go. I'm not gonna get into anything else, but I think it's fair play to find out whether or not he was supposed to even have one in the first place.

Tr. Vol. 2 at 229. The trial court replied that Lovett was allowed to have a gun in his place of business and asked, "Do you have any other questions?" *Id*. at 230. Dodson's counsel replied, "No, I just wanted to make sure we were all on the same page." *Id*.

[11] On appeal, Dodson contends that

this evidence [i.e., regarding whether Lovett could legally possess a firearm] was necessary to address evidence of the victim's good character presented by the State and to mitigate against an impermissible inference that [Dodson's] possession of a firearm when he returned to the barber shop was evidence of an intent to kill.

Appellant's Br. at 22. A fatal flaw in Dodson's argument is that he never made an offer of proof to establish what "this evidence" would be. Indiana Evidence Rule 103(a) provides that a party may claim error in a ruling to exclude evidence only if the error affects a substantial right of the party and the "party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." The State points out that "[a]lthough it is clear from the record the question that [Dodson] wanted to ask the witness, it is not clear from the record what the answer to the question would have been." Appellee's Br. at 20. Indeed, Johnson may not have known one way or the other whether Lovett could legally possess a firearm. Accordingly, we conclude that Dodson has waived this claim. *Henderson v. State*, 108 N.E.3d 407, 413 (Ind. Ct. App. 2018). And, in any event, we fail to see how Lovett's legal capacity to possess a firearm is relevant to Dodson's intent to kill him. *Cf.* Ind. Evidence Rule 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Ind. Evidence Rule 402 ("Irrelevant evidence is not admissible.").

## Section 3 – Dodson has waived his sentencing claim.

[12] Finally, Dodson asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Dodson claims that his sentence is inappropriate, but his argument is based on his bald assertion that "the trial court ignored significant and valid mitigating circumstances as well as overemphasizing [sic] aggravating circumstances and applying inappropriate aggravators when imposing sentence." Appellant's Br. at 34. A claim that a trial court erred in considering aggravating and mitigating circumstances is subject to an abuse-of-discretion standard of review; a claim that a sentence is inappropriate per Appellate Rule 7(B) requires a separate analysis. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Because Dodson has failed to present a cogent argument under either analysis, we find his sentencing claim waived. *See Kubina v. State*, 997 N.E.2d 1134, 1135 n.2 (Ind. Ct. App. 2013) (finding sentencing claim waived due to lack of cogent argument).

[13] Waiver notwithstanding, any inappropriateness claim would fail. "'[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as

accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* The nature of the murder here was heinous. After his verbal argument with Lovett, Dodson returned with an armed accomplice and mowed down Lovett in a hail of bullets outside his barber shop. As evidenced by his brutality and criminal record, Dodson's character is contemptible. Born in 1984, Dodson has three juvenile adjudications for criminal mischief and drug possession, six misdemeanor convictions for resisting law enforcement, marijuana possession, battery, disorderly conduct, and operating a vehicle with a controlled substance in his body, and a class D felony conviction for marijuana possession. He also has a federal felony conviction for possession of a firearm in furtherance of a drug trafficking crime, for which he was sentenced to sixty months, and he has had his probation revoked. Dodson's remark after the jury returned its verdicts showed callous disregard for Lovett's senseless death, and his profane remarks to the probation officer and the trial court showed contempt for the judicial system. We find no compelling evidence that would justify overturning the trial court's sentencing decision in this case, and therefore we affirm it.

[14] Affirmed.

Robb, J., and Brown, J., concur.